BRIAN MOONEY, ESQ.
California Bar No. 143795 (*Pro Hac Vice* Pending)
DIONE C. WRENN, ESQ.
Nevada Bar No. 13285
GORDON REES SCULLY MANSUKHANI, LLP
300 So. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 577-9301
Facsimile: (702) 255-2858
Email: bmooney@grsm.com
       dwrenn@grsm.com

*Attorneys for Defendant,*
*Abbott Laboratories*

# UNITED STATES DISTRICT COURT
## DISTICT OF NEVADA

| | |
|---|---|
| RICHARD JAGGARD and JUDY JAGGARD,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES, an entity of unknown corporate form; and DOES 1 through 50, INCLUSIVE,<br><br>Defendants. | CASE NO.: 3:21-cv-00360-RCJ-CLB<br><br>**JOINT STIPULATION AND REQUEST FOR LEAVE TO AMEND COMPLAINT** |

Defendant ABBOTT VASCULAR INC. ("Abbott"), erroneously named ABBOTT LABORATORIES, and Plaintiffs RICHARD and JUDY JAGGARD ("Plaintiffs"), by and through their undersigned counsel, hereby submit the following joint stipulation and request for leave for Plaintiffs to file an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure:

**WHEREAS**, on March 15, 2021, Plaintiffs initiated the underlying action in the Second Judicial District Court situated in Washoe County, Nevada.

**WHEREAS**, on July 12, 2021, Plaintiffs' served Abbott with the summons and complaint. *See* ECF No. 1-1.

**WHEREAS**, on August 10, 2021, Abbott filed a Petition for Removal to the United States District Court, District of Nevada. ECF No. 1.

-1-

1    **WHEREAS**, on August 13, 2021, defense counsel informed counsel for Plaintiffs that
2    Abbott Laboratories was likely not the proper defendant-entity, and on August 18, 2021
3    informed counsel for Plaintiffs that Abbott Cardiovascular Systems Inc. was the owner of the
4    subject product identified in the Complaint.

5    **WHEREAS**, the parties stipulate and agree to amend the complaint to add Abbott
6    Cardiovascular Systems Inc. and to dismiss Abbott Laboratories from the action. The proposed
7    First Amended Complaint is attached hereto as **Exhibit 1**.

8    **WHEREAS**, this stipulation does not constitute a waiver of any disputes, objections,
9    and defenses Abbott Cardiovascular Systems Inc. may have as to the sufficiency of the claims
10   and allegations asserted in Plaintiffs' First Amended Complaint, which may be asserted in a
11   responsive pleading or by motion pursuant to Rule 12.

12   **NOW, THEREFORE, IT IS HEREBY STIPULATED** by and between parties hereto
13   through their respective attorneys of records that Plaintiffs may, pursuant to Rule 15(a) of the
14   Federal Rules of Civil Procedure, file an amended complaint in the form of the First Amended
15   Complaint attached hereto as **Exhibit 1**.

16   DATED this 26th day of August 2021    DATED this 26th day of August 2021

17   **GORDON REES SCULLY**              **OSHINSKI & FORSBERG, LTD**
18   **MANSUKHANI**

19   */s/ Dione C. Wrenn*                 */s/ Mark Forsberg*
     BRIAN MOONEY, ESQ.                   MARK FORSBERG, ESQ.
20   California Bar No. 143795            Nevada Bar No. 4265
     (*Pro Hac Vice* Pending)             RICK OSHINSKI, ESQ.
21   DIONE C. WRENN, ESQ.                 Nevada Bar No. 4127
22   Nevada Bar No. 13285                 504 E. Musser St., Suite 302
     300 South 4th Street, Suite 1550     Carson City, NV 89701
23   Las Vegas, Nevada 89101              ***Attorneys for Plaintiffs***
     ***Attorneys for Defendant***
24

25                                        **ORDER**
26                                        IT IS SO ORDERED.
27                                        _____
                                          UNITED STATES MAGISTRATE JUDGE
28                                        DATED: August 26, 2021

-2-

# EXHIBIT 1

# EXHIBIT 1

Mark Forsberg, Esq., NSB 4265
Rick Oshinski, Esq., NSB 4127
OSHINSKI & FORSBERG, LTD.
504 E. Musser Street, Suite 202
Carson City, NV 89701
T 775-301-4250 | F 775-301-4251
Mark@oshinskiforsberg.com
Rick@oshinskiforsberg.com
*Attorneys for Richard and Judy Jaggard*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD JAGGARD and JUDY JAGGARD,<br><br>  Plaintiffs,<br><br>vs.<br><br>ABBOTT CARDIOVASCULAR SYSTEMS INC., a California corporation, and DOES 1 through 50, inclusive,<br><br>  Defendants.<br>_____/ | Case No.  3:21-cv-00360-RCJ-CLB |

## FIRST AMENDED COMPLAINT
## FOR DAMAGES AND STRICT PRODUCTS LIABILITY

COME NOW Plaintiffs, Richard Jaggard and Judy Ann Jaggard, husband and wife, by and through their attorneys, Mark Forsberg, Esq. and Oshinski & Forsberg, Ltd., and as and for their First Amended Complaint in the above action, allege and aver as follows.

## GENERAL ALLEGATIONS

1. Plaintiff RICHARD JAGGARD (hereinafter "Plaintiff" or "Jaggard") is an individual and a resident of Minden, Nevada. He is, and at all times relevant to this action was, married to Plaintiff JUDY JAGGARD (hereinafter "Judy").

1

2. Plaintiff is informed and believes, and thereon alleges, that Defendant ABBOTT CARDIOVASCULAR SYSTEMS INC. (hereinafter "ABBOTT") is a corporation formed and existing pursuant to the laws of the State of California. Upon information and belief, ABBOTT is a manufacturer of medical devices, including devices used in cardiac intervention and has its headquarters and principal place of business in California.

3. Plaintiffs are informed and believe, and thereon allege, that all times mentioned herein, each of the defendants was the agent, servant, representative or employee of each of the remaining defendants and, in engaging in certain acts hereinafter alleged, was acting within the course and scope of said agency, service, representation or employment and materially assisted the other defendants. Plaintiffs are further informed and believe, and thereon allege, that each of the defendants ratified the acts of the remaining defendants.

4. Plaintiffs are ignorant of the true names and capacities whether individual, corporate, associate or otherwise, of defendants sued herein as Does 1 through 50, inclusive, and therefore sues said defendants by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief, allege that each of the defendants designated herein as a Doe defendant is legally responsible in some manner for the events and happenings referred to herein and caused the damages proximately thereby to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of court to amend this complaint to show the true names and capacities of the defendants designated herein as Does when the identities of the Does have been ascertained.

## JURISDICTION

5. The federal court has jurisdiction under 28 U.S.C. § 1332 as the amount in controversy exceeds the value of $75,000, exclusive of interest and costs. Additionally, this action is between citizens of different states. Plaintiffs are citizens of Nevada and Defendant is believed to be a citizen of California.

## VENUE

6. A civil action may be brought in this, the District of Nevada pursuant to 28 U.S.C. § 391(b)(2), because a substantial part of the events or omissions giving rise to these claims occurred in this District, and in the unofficial Northern District.

## STATEMENT OF FACTS

7. Plaintiff RICHARD JAGGARD was, at times relevant to this action, an active 65-year-old man with a prior history of coronary stenting more than a decade earlier, who presented to the St. Mary's Regional Medical Center ("SMRMC") emergency department on March 13, 2017, complaining of a significant reduction in his tolerance of exercise over the previous two or three weeks, jaw discomfort during exercise and reporting that the symptoms had progressed. He was accompanied by JUDY.

8. Medical providers at SMRMC ordered a myocardial profusion study which revealed a small-to-medium sized area of basilar inferior wall ischemia.

9. JAGGARD was admitted to the hospital. On March 15, 2017, Devang Desai, M.D. ("Desai"), the SMRMC Chief of Interventional Cardiology, performed procedures on JAGGARD including right coronary cineangiography, left main coronary artery cineangiography, and the placement of two stents in those blood vessels. The stents were placed in the coronary blood vessels using a series of wires inserted at the right radial artery. Dr. Desai used a 190-centimeter cardiac interventional wire, model 1001780, manufactured by ABBOTT (the "BMW wire"), in the performance of the procedure on JAGGARD. Desai referred to this wire as the "BMW wire" in his operative notes and the procedure monitor also identified the wire using this nomenclature.

10. After placing stents, Desai removed the BMW wire that had been inserted during the procedure. Desai stated in his operative notes that the tip of the BMW wire "marker" had "stripped off the wire into a septal perforator of mid LAD." Dr. Desai noted that he checked the wire and he (incorrectly) concluded that the rest of the wire was intact. Dr. Desai finished the procedure and noted that JAGGARD tolerated the procedure well and without complications.

11. Notwithstanding Desai's statement the BMW wire appeared intact, a substantial length of a coil located at the distal tip of the BMW wire remained in JAGGARD's coronary blood vessels and eventually uncoiled and extended into his right common carotid artery. The length of the wire left in Plaintiff's coronary and carotid blood vessels was 15-30 centimeters long (as determined by two later procedures JAGGARD underwent to remove the wire).

12. JAGGARD was discharged to his home in Minden, Nevada where over the next 14 days

3

he continued to suffer the same symptoms that resulted in his emergency department visit of March 13, 2017. He returned to the SMRMC emergency department on March 27, 2017, again accompanied by JUDY. At this time he was seen by Sridevi Challapalli, M.D., identified by SMRMC as the Director of Outpatient Cardiology and Nuclear Cardiology. Dr. Challapalli ordered a repeat cardiac catherization scheduled for the morning of March 28, 2017.

13. On March 28, 2017, Frank Carrea, M.D., another interventional cardiologist at SMRMC, performed the cardiac catherization on Plaintiff. During the coronary and left ventricle cineangiography, Dr. Carrea identified the retained strand of the BMW wire, which he reported "appeared to be much smaller than the usual 0.14 thickness of a guide wire." He reported that the retained strand of guide wire terminated with a radiopaque marker in a septal perforator. He observed the BMW wire extending "through the proximal LAD, left main, ascending aorta and out into the innominate and up into the right common carotid artery." Dr. Carrea carried out a procedure in which he attempted to "snare" the retained wire. During this procedure, he twice was able to "grab" the wire but each time when he pulled on the BMW wire fragment, the wire broke. Dr. Carrea removed two segments of wire, which when straightened appeared to be 3–4 inches long. Dr. Carrea, in consultation with Mark McAllister, M.D., a radiologist, decided to stop the procedure because of the "fairly long period of fluoroscopy" performed on JAGGARD. Dr. Carrea's report indicates that JAGGARD was under conscious sedation for 132 minutes during this procedure. Dr. Carrea noted in his report his intent to consult with a cardiac surgeon to determine whether surgical removal of the guide wire would be necessary.

14. Dr. Carrea referred JAGGARD to Athan Roumanas, M.D., a cardiac heart surgeon, who Plaintiffs are informed and believe, is affiliated with Reno Heart Surgeons. The reason for his consultation was consideration of coronary artery bypass grafting and removal of the retained guide wire.

15. Dr. Roumanas recommended coronary artery bypass grafting to treat two additional blocked coronary arteries, with an attempt at removing the retained piece of wire, noting that it might not be possible to remove the wire, which was caught in the proximal left anterior descending artery stent.

4

16. Dr. Roumanas also opined that another option would be to simply observe JAGGARD and keep him anticoagulated. Dr. Carrea, on the other hand, identified in his notes the risk of wire-related thrombosis if the wire were left in place.

17. JAGGARD requested a second opinion. At the recommendation of Dr. Challapalli, JAGGARD was referred to an interventional cardiologist at University of California-Davis Medical Center ("UC-Davis") who was believed to be willing to make an additional attempt to remove the retained portion of the guide wire.

18. By this time, JAGGARD's condition had deteriorated such that he could barely walk across the room to use the bathroom due to the severity of his symptoms. Plaintiff and JUDY decided that because of his declining condition and their fears that he might not survive, they would contact their two children, Jennifer and James. Both children travelled to UC-Davis to be with their father during any procedure that was to be conducted at UC-Davis. JUDY feared for JAGGARD's life.

19. Plaintiff was discharged by air ambulance to UC-Davis for further treatment.

20. Plaintiff was admitted to the UC-Davis Medical Center on March 31, 2017.

21. At UC-Davis Medical Center, Plaintiff was under the care of Jason H. Rogers, M.D., and Jeffrey Allen Southard, M.D., who are listed in the hospital records as specializing in cardiology. On April 1, 2017, Dr. Rogers performed a coronary catherization of JAGGARD.

22. Dr. Rogers was able to retrieve the remaining retained portion of the BMW wire by using "a torque device to wrap the two BMW guide wires around the dislodged guide wire fragment and were successfully able to pull the wires back into the guide and retrieve the guide wire fragment with no evidence of perforation or dissection."

23. Additionally, the cardiologist performed sequential rotational atherectomy, placing two additional stents in Plaintiff's coronary arteries to resolve the blockages that were left untreated at SMRMC. The cardiologist noted that a tiny distal fragment of the guide wire remained in JAGGARD after the procedure.

24. Between March 16 and March 27, 2017, JAGGARD suffered severe pain, anxiety, stress, and emotional distress resulting from his continued symptoms of blocked coronary arteries. Moreover, after learning of the retained guide wire, Plaintiff and JUDY feared that the retained guide

wire could result in his imminent death or the long-term inability to enjoy the quality of life he enjoyed prior to his March 13, 2017 presentation at the SMRMC emergency department and treatment by Dr. Desai.

25. Plaintiff and JUDY continued to suffer severe anxiety, stress and emotional distress over concern of his prognosis after it was determined that the guide wire section had been left in his coronary arteries by Dr. Desai and after efforts to remove it were only partially successful and coronary bypass surgery was recommended.

26. JAGGARD suffered great distress during periods of wakefulness during the coronary catherization performed at UC-Davis when he would endure periods of conscious wakefulness during the procedure, each time fearing that he was dying.

27. Through the date of the filing of this complaint, Plaintiff and JUDY continue to suffer fear and anxiety regarding JAGGARD's condition, concern over JAGGARD's past and future medical care regarding the procedures he has undergone, and have lost substantially the quality of life they enjoyed prior to JAGGARD's treatment by Dr. Desai, as well as concern over the possible consequences of the fragment of the guide wire that remained in JAGGARD's body after most of it was removed at UC-Davis.

## FIRST CLAIM FOR RELIEF

### (Negligence)

28. Plaintiffs incorporate by this reference each and every allegation of their General Allegations and Statement of Fact into this, their First Claim for Relief, as if fully set forth herein.

29. Plaintiffs, RICHARD JAGGARD and JUDY JAGGARD, are individuals and are now, and at all times mentioned in this complaint were, residents of Douglas County, Nevada.

30. Defendant ABBOTT is now, and at all times mentioned in this First Amended Complaint was, a corporation formed, organized and existing under the laws of the State of California, with its principal place of business in the State of California.

31. Defendant ABBOTT is now, and at all times mentioned in this complaint was, in the business of designing, manufacturing, constructing, assembling, inspecting and selling various types of devices used in cardiac intervention, including the BMW wire used in the treatment of JAGGARD.

6

32. JAGGARD is informed and believes that SMRMC purchased the BMW wire from ABBOTT and alleges that Dr. Desai inserted into JAGGARD's blood vessels the BMW wire that had been designed, manufactured, constructed, assembled, inspected, and sold by ABBOTT.

33. On March 13, 2017, the BMW wire manufactured by ABBOTT malfunctioned, in that a portion of it broke off in JAGGARD's coronary arteries causing the injuries and damages described herein.

34. At all times mentioned in this complaint, Defendant ABBOTT so negligently and carelessly designed, manufactured, constructed, assembled, inspected, and sold the BMW wire that it was dangerous and unsafe for its intended uses.

35. As a direct and proximate result of the negligence and carelessness of ABBOTT as described above, Plaintiff JAGGARD suffered great physical pain and JAGGARD and JUDY suffered great resultant emotional distress and loss of quality of life.

36. As a direct and proximate result of the acts and omissions of ABBOTT, Plaintiffs RICHARD JAGGARD and JUDY JAGGARD have been damaged in a sum in excess of $75,000 and have been forced to engage legal counsel to prosecute this action.

37. Wherefore, judgment is prayed as hereinafter set forth.

### SECOND CLAIM FOR RELIEF

(Strict Products Liability)

38. Plaintiffs incorporate by this reference each and every allegation of their General Allegations, Statement of Fact and First Claim for Relief into this, their Second Claim for Relief, as if fully set forth herein.

39. At all times mentioned in this complaint, the BMW wire made by ABBOTT and its component parts were defective as to design, manufacture, and warnings, causing the BMW wire and its component parts to be in a dangerous and defective condition that made it unsafe for its intended use.

40. The BMW wire was used to treat JAGGARD for the purpose and in a manner reasonably foreseeable by ABBOTT.

41. The BMW wire was dangerous in that failed to perform in the manner reasonably to be expected in light of its nature and intended function.

42. As a direct and proximate result of the defective and dangerous condition of the BMW wire described above, the BMW wire failed and JAGGARD endured great physical pain and suffering and JAGGARD and JUDY suffered great emotional distress.

43. As a direct and proximate result of the acts and omissions of ABBOTT, Plaintiffs RICHARD JAGGARD and JUDY JAGGARD have been damaged in a sum in excess of $75,000 and have been forced to engage legal counsel to prosecute this action.

44. Wherefore, judgment is prayed as hereinafter set forth.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. For an award of damages to be determined at trial;
2. For an award of special damages to be determined at trial;
3. For prejudgment interest according to law to be determined at trial;
4. For costs of suit and attorney's fees incurred herein; and
5. For such other and further relief as this Court deems just in the premises.

Dated _____, 2021.    OSHINSKI & FORSBERG, LTD.

By: _____
Mark Forsberg, Esq., NSB 4265
*Attorneys for Richard and Judy Jaggard*

8